**FILED
CLERK**

4:27 pm, Jan 04, 2019

**U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE**

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
THOMAS GESUALDI, LOUIS BISIGNANO, ANTHONY D' AQUILA, MICHAEL O'TOOLE, MICHAEL BOURGAL, FRANK H. FINKEL, JOSEPH A FERRARA, SR., MARC HERBST, DENISE RICHARDSON, and THOMAS CORBETT as Trustees and fiduciaries of the Local 282 Welfare Trust Fund, the Local 282 Pension Trust Fund, the Local 282 Annuity Trust Fund, the Local 282 Job Training Trust Fund, and the Local 282 Vacation and Sick Leave Trust Fund,

     Plaintiffs,

  -against-

INTERSTATE PAYROLL COMPANY, INC., INTERSTATE INDUSTRIAL CORP, and INTERSTATE DRYWALL COMPANY, INC.,

     Defendants.
----------------------------------------------------------X

**MEMORANDUM OF DECISION & ORDER**
2:14-cv-06780 (ADS)(SIL)

**APPEARANCES:**

**Trivella & Forte, LLP**
*Counsel for the Plaintiffs*
1311 Mamaroneck Avenue, Suite 170
White Plains, NY 10605
  By: Jonathan Bardavid, Esq.,
     Arthur Muller, Esq., Of Counsel

**Chiesa Shahinian & Giantomasi, PC**
*Counsel for the Defendants*
One Boland Drive
West Orange, NJ 07052
  By: Ronald L. Tobia, Esq., Of Counsel

1

**SPATT, District Judge**:

Thomas Gesualdi, Louis Bisignano, Anthony D'Aquila, Michael O'Toole, Michael Bourgal, Frank H. Finkel, Joseph A. Ferrara, Sr., March Herbst, Denise Richardson, and Thomas Corbett (together, the "Plaintiffs") are trustees and fiduciaries of the Local 282 Welfare Trust Fund, the Local 282 Pension Trust Fund (the "Pension Fund"), the Local 282 Annuity Trust Fund, the Local 282 Job Training Trust Fund, and the Local 282 Vacation and Sick Leave Trust Fund (together, the "Funds"). The Plaintiffs commenced this action for injunctive and monetary relief based on violations of Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132 and 1145, as amended by the Multiemployer Pension Plan Amendment Act of 1980 ("MPAA"), 29 U.S.C. § 1381 *et seq*., and Section 301 of the Labor Management Relations Act, 29 29 U.S.C. § 185 ("LMRA"). This action is to recover purportedly delinquent contributions owed by Interstate Payroll Company Inc. ("Interstate Payroll"), Interstate Industrial Corp. ("Interstate Industrial"), and Interstate Drywall Company, Inc. ("Interstate Drywall") (together, the "Defendants"). The complaint contends that the Defendants are jointly and severally liable for all amounts owed to the Funds.

Presently before the Court is a motion for partial summary judgment filed by the Plaintiffs, pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 56 seeking summary judgment on the first and second counts of the amended complaint against Interstate Payroll. For the reasons set forth below, the motion is granted.

## I. BACKGROUND

Unless otherwise noted, the following facts are undisputed and are drawn from the parties' Local Rule 56.1 statements.

A. **THE FACTUAL BACKGROUND**

The Funds are maintained pursuant to the Amended and Restated Agreement and Declaration of Trust ("Trust Agreement") and its predecessor agreements to collect and receive contributions and provide benefits to eligible participants and their beneficiaries. The Trust Agreement requires employers to submit to periodic audits of its books and records to verify that all contributions required have been remitted to the Funds.

On October 10, 2006, Interstate Payroll entered into a site agreement for a job at New York Law School (the "Site Agreement") involving on-site trucking and delivery services. Interstate Payroll provided payroll services for Interstate Industrial and Interstate Drywall. The Site Agreement recognizes the union-at-issue as the sole and exclusive bargaining agent for all drivers employed by Interstate Payroll in connection with their work at New York Law School, and stipulates that the 2006-2009 New York City Heavy Construction & Excavating Contract (the "CBA") applies to all employees covered by the Site Agreement. The CBA incorporates the Trust Agreement into the CBA and provides that a signatory employer is bound to the Trust Agreement. Both the Site Agreement and the CBA requires Interstate Payroll to contribute to the Funds at specified rates for each hour of covered work.

In 2008, the Trustees engaged Wagner & Zwerman, LLP (W&Z") to conduct an audit of Interstate Payroll's books and records for the period of October 10, 2006 through April 30, 2007. This audit concluded that Interstate Payroll was responsible for $12,580.18 in unpaid contributions during that timeframe, and $2,062.64 in interest through February 4, 2008. Any interest on unpaid contributions continues to accrue at a daily interest rate of $6.20. At the time of filing of the instant motion, the total interest on the alleged unpaid contribution amounted to $25,101.84. W&Z billed the Funds $2,029.29 for services rendered during the audit.

In September 2009, Interstate Payroll ceased all contributions to the Pension Fund. The Defendants contend that Interstate Payroll received a letter from the Pension Fund stating that Interstate Payroll permanently ceased all contributions to the Pension Fund as of September 2009, and that Interstate Payroll effectuated a complete withdrawal. While an individual who worked at Interstate Payroll stated during his deposition that he personally recalled receiving this letter, Interstate Payroll has not produced it during discovery and postulates that it may have been stored in a trailer in Staten Island, which was damaged during Hurricane Sandy.

The Pension Fund engaged the Segal Company to calculate the withdrawal liability for all employers who had withdrawn from the Pension Fund. The Segal Company calculated that Interstate Payroll owed $167,132.00 in withdrawal liability to the Pension Fund. On or about June 10, 2013, the Pension Fund sent Interstate Payroll a Notice and Demand for Withdrawal Liability ("Notice Letter"), pursuant to ERISA, which detailed the amount of withdrawal liability and provided a schedule for withdrawal liability payments. The Notice Letter demanded that Interstate Payroll make 29 monthly payments of $6,001.69 and a final payment of $3,634.04, with the first monthly payment to be due on or before July 1, 2013. The Pension Fund received no withdrawal liability payments.

On or about August 7, 2013, the Fund sent Interstate Payroll a Notice of Default, which noted Interstate Payroll's failure to remit its first monthly payment and informed Interstate Payroll that it was in default of its obligations under ERISA. Interstate Payroll was provided 60 days to cure its default. Interstate Payroll did not make any withdrawal liability payments to this date and failed to commence arbitration proceedings to challenge the Pension Fund's assessment of withdrawal liability.

The Plaintiffs contend that Interstate Payroll is liable for $167,132.00 of withdrawal liability; $143,658.06 in interest calculated through April 9, 2018; additional daily interest accruing at a rate of $82.42 per day; $63,873.50 in attorneys' fees; and $2,261.71 in costs.

**B. THE PROCEDURAL BACKGROUND**

On November 18, 2014, the Plaintiffs commenced this action against Interstate Payroll, seeking to recover withdrawal liability and unpaid contributions found to be due during an audit. The complaint was amended on May 23, 2017 to add Interstate Industrial and Interstate Drywall to the action and hold the Defendants jointly and severally liable for all amounts owed by Interstate Payroll.

On April 9, 2018, the Plaintiffs filed the instant motion for partial summary judgment seeking summary judgment on the first and second counts of the amended complaint against Interstate Payroll. The motion was fully briefed by May 21, 2018.

## II. DISCUSSION

**A. STANDARD OF REVIEW: FED. R. CIV. P. 56**

Pursuant to Rule 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015); *Kwong v. Bloomberg*, 723 F.3d 160, 164-65 (2d Cir. 2013); *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). When deciding a motion for summary judgment, "[t]he Court 'must draw all reasonable inferences and resolve all ambiguities in favor of the non–moving party.'" *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 137 (2d Cir. 1998) (quoting *Garza v. Marine Transp. Lines, Inc.*, 861 F.2d 23, 26 (2d Cir. 1998)). A dispute is genuine if the "evidence is such

that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In considering a summary judgment motion pursuant to Rule 56, the Court must "view the evidence in the light most favorable to the non-moving party … and may grant summary judgment only when 'no reasonable trier of fact could find in favor of the nonmoving party.'" *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal citations omitted); *see also Doro v. Sheet Metal Workers' Int'l Ass'n*, 498 F.3d 152, 155 (2d Cir. 2007) (noting that in deciding a summary judgment motion, the court will "constru[e] the evidence in the light most favorable to the nonmoving party and draw[] all inferences and resolv[e] all ambiguities in favor of the nonmoving party"); *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (stating that in deciding a Rule 56 motion, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." (internal citations omitted)).

It is the movant's burden to initially demonstrate the absence of material facts that preclude summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005) (citing *Castro v. United States*, 34 F.3d 106, 112 (2d Cir. 1994)). Such a "burden on the moving party may be discharged by 'showing' … that there is an absence of evidence to support the nonmoving party's case." *PepsiCo, Inc. v. CocaCola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986)). If the moving party meets the initial burden, the nonmoving party must present specific facts that demonstrate there is a genuine issue that should be left for the fact-finder to decide. *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002); *see also Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-

87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (requiring the nonmoving party to "do more than simply show that there is some metaphysical doubt as to the material facts … the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" (internal citations omitted)).

It is not the Court's responsibility to resolve any purported issues of disputed facts, but merely to "assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986) (internal citations omitted); *accord Cuff ex rel. B.C. v. Valley Cent. Sch. Dist.*, 677 F.3d 109, 119 (2d Cir. 2012) (stating that the Court should not attempt to resolve issues of fact, but rather "assess whether there are any factual issues to be tried"); *Cioffi v. Averill Park Cent. Sch. Dist. Bd. Of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006) (noting that the responsibility of the district court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial" (quoting *Anderson*, 477 U.S. at 249)). If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not present. *Anderson*, 477 U.S. at 249. The mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient. Conjecture, speculation, or conclusory statements are not enough to defeat summary judgment. *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996) (internal citations omitted).

**B. AUDIT CLAIMS**

The Plaintiffs contend that the Trustees have the right to audit Interstate Payroll and collect delinquent contributions pursuant to the audit. They have submitted admissible evidence that Interstate Payroll owes $12,580.18 in contributions for the period of October 10, 2006 through April 30, 2007 and that Interstate Payroll has failed to remit these contributions to the Funds. The

Plaintiffs further allege that the Defendants have failed to provide any admissible evidence regarding the amount owed or liability resulting from the audit. The Defendants have failed to respond, in any way, to this argument either in their opposition papers or supporting materials.

In deciding a motion for summary judgment, the Court can only consider evidence that would otherwise be admissible. *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 264 (2d Cir. 2009) (quoting *Raskin v. Wyatt Co.*, 125 F.3d 55, 65-66 (2d Cir. 1997)). Rule 56(c)(1) provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1).

Rule 56(e) details the Court's options "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)[.]" FED. R. CIV. P. 56(e). The Court may either "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." FED. R. CIV. P. 56(e). "Rule 56(e) … requires the nonmoving party to go beyond the pleadings … [to] designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007).

8

"[Local Rule 56.1] requires a party moving for summary judgment to submit a statement of the allegedly undisputed facts on which the moving party relies, together with citation to the admissible evidence of record supporting each such fact. … If the opposing party then fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted." *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) (citing LOCAL CIV. R. 56.1). Courts may decline "to consider as disputed any statement supported by admissible evidence to which [the non-moving party] objects, but does not support with evidence." *Feis v. United States*, 394 F. App'x 797, 799 (2d Cir. 2010) (internal citations and quotation marks omitted). Further, "[w]hile the trial court has discretion to conduct an assiduous review of the record in an effort to weigh the propriety of granting a summary judgment motion, it is not required to consider what the parties fail to point out." *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000) (internal citations omitted).

The Defendants have not produced any admissible evidence in the record to oppose the Plaintiffs' admissible evidence regarding the audit. The Defendants' response to the Plaintiffs' 56.1 statement merely denies that the Defendants owe any unpaid contributions during the relevant period but do not cite to any admissible evidence to support the denial. Therefore, those statements are deemed admitted. Moreover, in their opposition to the Plaintiffs' motion, the Defendants make no reference to the Plaintiffs' related arguments. The Court has exercised its discretion to conduct an independent review of the record to ascertain whether there is a triable issue of material fact and found no admissible evidence in the record from which a rational juror could find in the Defendants' favor regarding the results of the audit.

Accordingly, the Plaintiffs are granted summary judgment on this claim and awarded $12,580.18 in unpaid contributions.

## C. WITHDRAWAL CLAIMS

The Plaintiffs also move for partial summary judgment on the withdrawal liability claim.

In enacting ERISA in 1974, Congress acted

> to ensure that employees and their beneficiaries would not be deprived of anticipated retirement benefits by the termination of pension plans before sufficient funds have been accumulated in the plans. Congress wanted to guarantee that if a worker has been promised a defined pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit—he actually will receive it.

*Pension Benefit Guar. Corp. v. R.A. Gray and Co.*, 467 U.S. 717, 720, 104 S. Ct. 2709, 81 L. Ed. 2d 601 (1984) (internal citations and quotation marks omitted).

The MPAA built on those goals but aimed to reduce the incentive for employers to withdraw from multiemployer plans. *Id*. at 722-24 ("ERISA did not adequately protect plans from the adverse consequences that resulted when individual employers terminate their participation in, or withdraw from, multiemployer plans."). It created a comprehensive statutory scheme whereby "an employer withdrawing from a multiemployer pension plan [is required to] pay a fixed and certain debt to the pension plan. This withdrawal liability is the employer's proportionate share of the plan's 'unfunded bested benefits,' calculated as the difference between the present value of vested benefits and the current value of the plan's assets." *Id.* at 725 (internal citations omitted). The statutorily defined process for withdrawal is explained as follows:

> When an employer withdraws from a plan (withdrawal being defined in 29 U.S.C. § 1383 and 29 U.S.C. § 1385), the plan sponsor must determine the amount of liability and notify the employer of the amount. 29 U.S.C. § 1382. The employer must be notified "as soon as practicable" after withdrawal, and the notice must include the amount of the liability, a schedule for liability payments, and a demand for payment in accordance with the schedule. 29 U.S.C. § 1399(b)(1). Once the employer receives notice, it must begin payment in accordance with the schedule within 60 days, "notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule." 29 U.S.C. § 1399(c)(2). …

> Within 90 days after receiving notice, the employer "(i) may ask the plan sponsor to review any specific matter relating to the determination of the employer's liability and the schedule of payments, (ii) may identify any inaccuracy in the determination of the amount of the unfunded vested benefits allocable to the employer, and (iii) may furnish any additional relevant information to the plan sponsor." 29 U.S.C. § 1399(b)(2)(A). After a "reasonable review of any matter raised," the plan shall notify the employer of its decision, the basis for its decision, and the reason for any change in its determination of liability or schedule of payments. 29 U.S.C. § 1399(b)(2)(B). Regardless of whether any such review is requested and received, the employer is obligated to begin payment within 60 days of notification. 29 U.S.C. § 1399(c)(2).
>
> Any dispute concerning the plan's assessment of liability must be settled through arbitration. 29 U.S.C. § 1401(a)(1). Either party may initiate arbitration, but it must do so by the earlier of (i) 60 days after notification to the employer of the plan's post-review decision under § 1399(b)(2)(B), or (ii) 180 days after the date of the employer's request for review under § 1399(b)(2)(A). 29 U.S.C. § 1401(a)(1). In addition, the parties may jointly initiate arbitration within 180 days after the plan's initial demand for payment under § 1399(b)(1). 29 U.S.C. § 1401(a)(1).
>
> If no arbitration proceeding is initiated within these timeframes, then the amount demanded by the plan becomes final and must be paid in accordance with the schedule provided by the plan. 29 U.S.C. § 1401(b)(1). Failure to demand arbitration within the statutory time frame bars the employer from contesting liability for the amount demanded. 29 U.S.C. § 1401(a)(1), (b)(1)[.] …
>
> If the employer defaults in making payments pursuant to the schedule, the plan may require immediate payment of the entire unpaid amount of the employer's withdrawal liability, plus accrued interest on the total outstanding liability from the date of the first scheduled payment that was not timely made. 29 U.S.C. § 1399(c)(5). A "default" is defined for purposes of this section as: 1) the failure of an employer to make a scheduled payment, when that failure is not cured within 60 days after written notification from the plan of the failure; or 2) any event defined in rules adopted by the plan that indicates a "substantial likelihood" that the employer will be unable to pay withdrawal liability. 29 U.S.C. § 1399(c)(5)(A) and (B).

*Amalgamated Lithographers of Am. v. Unz & Co. Inc.*, 670 F. Supp. 2d 214, 221-22 (S.D.N.Y. 2009); *accord Bd. of Trs. of the UFCW Local 174 Pension Fund v. Karl Ehmer Delicatessen*, No. 10-CV-3188, 2011 WL 4382862, at *2 (E.D.N.Y. Aug. 8, 2011) (same).

In this case the Plaintiffs have satisfied the statutory prerequisites for demanding withdrawal liability on Interstate Payroll. Interstate Payroll permanently ceased all contributions

to the Pension Fund in September 2009, giving rise to withdrawal liability. The Plaintiffs provided Interstate Payroll with a demand letter on or about June 10, 2013 that stated the amount of withdrawal liability and provided a schedule for payment. Interstate Payroll failed to respond or pay the Pension Fund. The Plaintiffs notified Interstate Payroll of its default on or about August 7, 2013 and gave Interstate Payroll the option of curing default within 60 days. At no time did Interstate Payroll respond to any of the Plaintiffs' notices, make any payments, or initiate an arbitration proceeding. Therefore, Interstate Pension has waived its right to contest either liability or damages concerning withdrawal liability.

The Defendants contend that in 2010 the Funds sent Interstate Payroll a letter stating that its withdrawal liability was zero. As the document has not been located, the parties have been unable to resolve whether this letter existed. However, Frank DiTommaso, an employee of Interstate Payroll at the time, stated that Interstate Payroll had received such a letter and that it stated that there was no withdrawal liability. Regardless of the existence of this purported letter, Interstate Payroll concedes that it did not initiate arbitration to challenge the withdrawal liability. If a defendant does not initiate arbitration, it "waive[s] its right to arbitration and its right to assert any defenses in [an] action seeking withdrawal liability. [Consequently], the withdrawal liability assessed against [the defendant] become[s] fixed." *Vacca v. Bridge Chrysler Jeep Dodge, Inc.*, No. 06-CV-3543, 2008 WL 4426875, *7 (E.D.N.Y. Sept. 4, 2008); *see also ILGWU Nat'l. Ret. Fund v. Levy Bros. Frocks, Inc.*, 846 F.2d 879, 887 (2d Cir. 1988) ("Congress intended that disputes over withdrawal liability would be resolved quickly, and established a procedural bar for employers who fail to arbitrate disputes over withdrawal liability in a timely manner. …The failure to seek such relief on a timely basis may, in some instances, lead to a harsh result, but the harshness of the default is largely a self-inflicted wound." (internal citations and quotation marks omitted)).

As such, Interstate Payroll has waived its right to contest the amount of withdrawal liability and summary judgment is granted as to this claim. Interstate Payroll is therefore obligated to pay the amount of liability assessed in the notice of withdrawal liability—in this case, $167,132.00.

**D. ADDITIONAL DAMAGES**

**1. Interest**

The Plaintiffs also seek interest on the audit and withdrawal liability, which is mandatory pursuant to both ERISA 29 U.S.C. § 1132(g)(2), and the MPPAA, 29 U.S.C. § 1399(c)(3).

The interest awarded regarding withdrawal liability "shall be charged or credited for each calendar quarter at an annual rate equal to the average quoted prime rate on short-term commercial loans for the fifteenth day of the month proceeding the beginning of each calendar quarter," unless a different rate is specified by the plan at issue. 29 C.F.R. § 4219.32(b). Interest shall accrue from the date of the first delinquent payment. *See* 29 U.S.C. § 1399(c)(5). The first monthly payment was due on July 1, 2013.

Pursuant to the Trust Agreement, Interstate Payroll is liable for interest at the rate of one and one-half percent per month, or eighteen percent per year, beginning July 1, 2013. Accordingly, Interstate Payroll is obligated to pay daily interest at the rate of $82.42 per day until the date of judgment.

Interstate is also liable for interest on the unpaid contributions. The Trust Agreement specifies that the Funds are entitled to interest on unpaid contributions at the rate of one and one-half percent per month, or eighteen percent per year, beginning on the first day of the month where payment is due. W&Z calculated that the interest owed through April 9, 2018 is $25,101.84 and that additional daily interest continues to accrue on the balance from April 10, 2018 through the date of judgment in the amount of $6.20 per day.

Accordingly, Interstate Payroll is obligated to pay $25,101.84 in addition to $6.20 per day from April 10, 2018 until the date of judgment.

**2. Liquidated Damages**

Pursuant to Section 502(g)(2)(C) of ERISA, and the Trust Agreement, the Funds are entitled to liquidated damages in an amount equal to the greater of interest on the unpaid contributions or twenty percent of the unpaid contributions. The Trust Agreement provides that liquidated damages equal to the greater of the two options.

Here, the interest on the unpaid withdrawal liability amounts to $82.42 per day beginning July 1, 2013 and the interest on the unpaid contributions amounts to $25,101.84 in addition to $6.20 per day from April 10, 2018 until the date of judgment. Accordingly, Interstate Payroll is obligated to pay liquidated damages at the rate described above until the date of judgment.

**3. Attorneys' Fees and Costs**

The Plaintiffs also request attorneys' fees and costs associated with this litigation. Section 502(g)(2) of ERISA provides for reasonable attorneys' fees and costs when a judgment is granted in favor of a plan fiduciary. To determine the amount of reasonable attorneys' fees, the Court uses the lodestar method, which takes "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). The reasonableness of the hourly rates should be based on the "prevailing [marketplace rates] in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." *Cruz v. Local Union No. 3 of IBEW*, 34 F.3d 1148, 1159 (2d Cir. 1994) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)).

To calculate the total award, the Plaintiffs propose the following hourly rates: Scott Trivella (Partner) $400-$425; Christopher Smith (Partner) $450; James Grisi (Partner) $375-$395; Denise Forte (Partner) $425; Jonathan Bardavid (Senior Associate) $375-$415; Arthur Muller (Junior Associate) $290-$305; Jael Dumornay (Junior Associate) $290-$390; Michelle Salerno (Paralegal) $115-$120; Anna Chiarolanza (Paralegal) $110-$120; Lauren Dammacco (Paralegal) $115-$120.

Most of the cases cited by the Plaintiffs to support their hourly rates were litigated in the Southern District of New York, not the Eastern District of New York, where hourly rates are "substantially lower." *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 172 (2d Cir. 2009). "[I]n order to receive an attorney's fee award based on higher out-of-district rates, a litigant must overcome a presumption in favor of the forum rule, by persuasively establishing that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Id*. "A litigant cannot overcome th[at] presumption through mere proximity of the districts[.]" *Id*. at 176.

The Plaintiffs have not argued that this case involves matters so complex as to require "special expertise beyond the competence of [forum district] law firms," *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2007) (internal citations omitted), or that a reasonable, paying client would have paid rates typically approved in the Southern District of New York. Therefore, the Court will use the prevailing rate in the Eastern District to calculate the presumptively reasonable fee.

The hourly rates for attorneys approved in cases in this District have ranged from $200 to $400 for partners, $200 to $375 for senior associates, $100 to $150 for junior associates, and $70 to $110 for paralegals. *Gesualdi v. Ava Shypula Testing & Inspection, Inc.*, No. 13-CV-1873,

2014 WL 1399417, at *7-8 (E.D.N.Y. Apr. 10, 2014) (approving hourly fees for the Plaintiffs' counsel of $400 per hour for partner time, $375 per hour for senior associate time, and $110 per hour for paralegal time); *Cho v. Koam Med. Servs. P.C.*, 524 F. Supp. 2d 202, 207 (E.D.N.Y. 2007) ("Overall, hourly rates for attorneys approved in recent Eastern District of New York cases have ranged from $200 to $350 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates, and $70 to $80 for legal assistants."); *see also Estrella v. P.R. Painting Corp.*, 596 F. Supp. 2d 723, 726 (E.D.N.Y. 2009) (Spatt, J.) (finding a $250 hourly rate for a partner to be reasonable); *Comm'n Express Nat'l, Inc. v. Rikhy*, No. 03-CV-4050, 2006 WL 385323, *6 (E.D.N.Y. Feb. 16, 2006) ("Hourly rates approved in recent Eastern District of New York cases have ranged from $200 to $300 for partners; $100 to $150 for junior associates and $200 to $250 for senior associates.") (collecting cases).

After reviewing the credentials and experience of the Plaintiffs' counsel and reviewing the hourly rates for this case and in other cases in this District, the Court concludes that, considering the circumstances of the instant case, the hourly rates will be amended as follows: (1) up to $400 for partner time; (2) up to $375 for senior associate time; (3) up to $250 for junior associate time; and (4) up to $110 per hour for paralegal time. When the requested hourly rates are reduced to the amended hourly rate set forth above, the Court awards $59,381.00 in attorneys' fees.

The Plaintiffs also seek an award of $2,261.71 in costs associated with the prosecution of this action. After examination of the Plaintiffs' documentation to support their request, the Court finds that the costs are incidental to and necessary for their representation in this case. *See Sec. Exch. Comm'n v. Goren*, 272 F. Supp. 2d 202, 213 (E.D.N.Y. 2003). The Court awards the Plaintiffs $2,261.71 in costs.

Accordingly, Interstate Payroll is obligated to pay attorneys' fees in the amount of $59,381.00 and costs in the amount of $2,261.71.

**4. Audit Fees**

W&Z, the firm which conducted the audit, billed the Funds $3,029.29. Pursuant to the Trust Agreement and Section 1132(g)(2)(e) of ERISA, the Interstate Payroll is obligated to pay the cost of preparing the audit. Accordingly, Interstate Payroll is ordered to pay audit fees in the amount of $3,029.29.

### III. CONCLUSION

For the reasons set forth above, the Plaintiffs' motion for summary judgment pursuant to Rule 56 is granted as to the first and second causes of action as to Interstate Payroll. The Plaintiffs are awarded the following sums: (a) $167,132.00 in withdrawal liability; (b) daily interest on the withdrawal liability at the rate of $82.42 per day from July 1, 2013 until the date of judgment; (c) daily liquidated damages on the withdrawal liability at the rate of $82.42 per day from July 1, 2013 until the date of judgment; (d) $12,580.00 in unpaid contributions; (e) interest on the unpaid contribution of $25,101.84 in addition to $6.20 per day from April 10, 2018 until the date of judgment; (f) liquidated damages on the unpaid contribution of $25,101.84 in addition to $6.20 per day from April 10, 2018 until the date of judgment; (g) $61,642.71 in attorneys' fees and costs; and (h) $3,029.29 in audit costs and fees.

It is **SO ORDERED**:

Dated: Central Islip, New York

January 4, 2019

___/s/ Arthur D. Spatt_____

ARTHUR D. SPATT

United States District Judge
